IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TIMES-NEWS PUBLISHING COMPANY,    )
                                  )
            Plaintiff,            )
                                  )
      v.                          )   Civil Action No.: 1:08CV00415
                                  )
CITY OF BURLINGTON,               )
                                  )
            Defendant.            )

**MEMORANDUM OPINION AND ORDER**

SCHROEDER, District Judge.

This matter is before the court on motion of Plaintiff Times-News Publishing Company ("Times-News") for a Temporary Restraining Order and Preliminary Injunction, seeking to enjoin an ordinance enacted by Defendant City of Burlington ("the City") and slated to go into effect July 1, 2008. (Doc. 3.) The Times-News alleges the ordinance unconstitutionally interferes with its First Amendment rights of free speech and of the press. (Doc. 1.) Following briefing by both parties, the court held an evidentiary hearing on June 27, 2008, and the motion is ripe for decision.

**I.    BACKGROUND**

At a public hearing on June 3, 2008, the City considered and adopted Ordinance 08-19, which provides in relevant part as follows:

ORDINANCE PROHIBITING THE SOLICITATION OF OCCUPANTS OR VEHICLES BEING OPERATED UPON PUBLIC STREETS OR HIGHWAYS

WHEREAS, the City of Burlington is authorized to regulate solicitation by North Carolina General Statutes 20-175, 160A-300, and 160A-174; and

WHEREAS, the solicitation of employment, transportation, business, money, or other items of value from occupants of vehicles being operated upon the streets and highways of the City of Burlington poses a significant hazard both to pedestrians and motorists; and,

WHEREAS, such solicitors stand and sit in the medians at intersections of heavily traveled streets and highways, and approach vehicles that are stopped at those intersections; and,

WHEREAS, such solicitors make some drivers of vehicles feel uncomfortable and apprehensive when solicitors are standing next to their vehicles; and,

WHEREAS, public safety requires the imposition of reasonable manner and places restrictions on solicitation while respecting the constitutional right of free speech for all citizens; and,

*    *    *

The purpose of this ordinance is to prohibit the solicitation of occupants of vehicles on streets and highways, and to thereby regulate vehicular and pedestrian flow and to promote roadway safety.

*    *    *

(a) It shall be unlawful for any person to stand on any street, highway or right-of-way, excluding sidewalks, within the City of Burlington while soliciting or attempting to solicit any employment, business, or

2

contributions from the driver or occupants of
any vehicle.

(b) This section shall not apply to emergency
repairs of services requested by the operators
of such vehicles.

(c) Any person in violation of this section
shall be guilty of a misdemeanor and upon
conviction shall be fined not more than fifty
dollars ($50) or imprisoned for not more than
seven (7) days.

(Doc. 4 at 7-15.)

Plaintiff Times-News offered evidence from its editor, Mr.
Stephen Buckley, who testified as follows: Times-News is a North
Carolina corporation that publishes and distributes the *Burlington
Times-News* newspaper throughout the City of Burlington via a
variety of means, including home delivery, newsstands, and the
Internet. For the past eight years Times-News, working through
local charitable organizations, has employed low- or no-income
individuals on a contract basis to sell its Sunday morning
newspapers on selected Burlington street corners to drivers passing
by. Papers are sold to the street vendors at wholesale cost ($0.25
each), who in turn charge $1.00 each; leftover papers can be
returned to Times-News for full credit. Through this program,
Times-News has increased its weekly Sunday circulation between 700
and 800 newspapers, to a total just in excess of 26,000 newspapers.
Sales by street vendors comprise approximately three percent of
Times-News' sales. Street vendors must obtain a City permit to

3

conduct sales and are encouraged by Times-News to wear reflective safety vests. To date, no injuries have been reported by any street vendor participating in this program.

Times-News contends that Ordinance 08-19 constitutes a ban on the sale of its newspapers by its street vendors. The loss to Times-News consists not only of its sales revenue (approximately $200/week), but also its lost advertizing revenue which Mr. Buckley testified, depending on the analysis employed, may exceed hundreds of thousands of dollars annually.[1]

The City has offered evidence in the form of affidavits from Steve Smith, Captain of the Operations Bureau of the City's Police Department (Doc. 7, Attach. 3; Docs. 8-15), and Nolan Kirkman, a licensed professional engineer employed by the City as Traffic Systems Manager (Doc. 7, Attachs. 1 & 2). Captain Smith testified to the dangers of being a pedestrian on the roads and reports that between March 2007 and March 2008 his department received 155 calls regarding persons soliciting from the roads and rights-of-way. Captain Smith concludes it is unsafe to solicit from the roads and medians, and he provides by the court's count approximately 470 police reports of automobile accidents in and around intersections and medians in Burlington, including those from which Times-News vendors operate. Captain Smith also provided a videotape of Times-

---

[1] Mr. Buckley testified such loss could approach up to 3% of Times-News' $11 million annual revenue.

News vendors as they sell newspapers at various intersections in Burlington. Among the scenes depicted is a car stopping just through an intersection during a green traffic signal to hail a Times-News street vendor (who is not wearing a reflective vest), forcing other cars to slow and change lanes to avoid impeding traffic flow or a collision as the transaction is conducted.

Mr. Kirkman testified that he is responsible for managing traffic flow in Burlington and investigating issues of traffic control, flow and safety. (Id., Attach. 1 at 1-2.) He testified that he is familiar with the prevalence of solicitations in Burlington by panhandlers, charitable organizations and Times-News. (Id., Attach. 1 at 2.) According to Mr. Kirkman, solicitations occur on the most heavily traveled roads in Burlington, including medians upon which motorists have driven and caused damage. (Id.) Evidence of traffic counts for several of the major intersections where Times-News street vendors sell newspapers revealed anywhere from 8,500 to 106,000 automobiles daily, with several intersections averaging 25,000 or more. (Id., Attach. 1 at 3-5.) Many of the medians at intersections are as narrow as four feet. (Id., Attach. 1 at Exs. C, F, G, H, I & J.) In 2006, pedestrians accounted for 11.1% of all traffic fatalities in North Carolina. Traffic medians and roadways were never designed for use by solicitors; rather, the standard practice among traffic engineers is to channel pedestrians

5

across streets at intersections or marked crosswalks (where motorists are accustomed to looking for them). (<u>Id.</u>, Attach. 1 at 6.) Applications for street solicitation permits are increasing from 1,139 last year to 492 in the first quarter of 2008 alone. Mr. Nolan concluded that solicitations from roadways and medians impede traffic when vehicles stop for transactions with panhandlers, charitable solicitors and newspaper salespersons, making such transactions unsafe. This remains true, albeit to a lesser degree according to Mr. Kirkman, for lesser traveled streets in Burlington. (<u>Id.</u>, Attach. 1 at 7.)

Times-News alleges that Ordinance 08-09 is unconstitutional and infringes its free speech and press rights as applied.

## II. ANALYSIS

### A. Jurisdiction

This court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) inasmuch as the claims arise under the United States Constitution and 42 U.S.C. § 1983, and pursuant to the court's supplemental jurisdiction authority under 28 U.S.C. § 1367 as to the claims under the North Carolina Constitution.[2]

---

[2] Times-News made no argument as to its claims under the North Carolina Constitution, and thus the motion will be analyzed only as to the federal claims. (Doc. 4.)

6

### B.  Preliminary Injunction

This circuit follows the "balance of hardships" standard for a preliminary injunction under Rule 65(a), Fed. R. Civ. P.  The court must consider:  "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the requested relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest."  Ciena Corp. v. Jarrard, 203 F.3d 312, 322 (4th Cir. 2006) (internal citations and quotation marks omitted).  The balance of hardships is the most important consideration, and the outcome of that analysis will drive how strong a likelihood of success on the merits must be shown by a plaintiff.  If the balance tips in a plaintiff's favor, it need only show "questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation."  Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., 550 F.2d 189, 195 (4th Cir. 1977).  The Fourth Circuit has stated that the court must conceptually analyze the first two factors separately from the likelihood of success on the merits, "but once a court has performed these separate analyses, it must then make the equitable determination whether to grant injunctive relief."  Ciena Corp., 203 F.3d at 323.

Where the irreparable harm alleged is inseparably linked to a plaintiff's claim of infringement of First Amendment rights, however, the determination of likelihood of irreparable harm may turn necessarily on a plaintiff's likelihood of success on the merits, and the two factors can be analyzed together. <u>Giovani Carandola, Ltd. v. Bason</u>, 303 F.3d 507, 511 (4th Cir. 2002). Ultimately, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all the factors," <u>Blackwelder</u>, 550 F.2d at 196, and "is left to the sole discretion of the district court," <u>Hicks v. Halifax County Bd. of Educ.</u>, No. 5:98-CV-981-BR(2), 1999 U.S. Dist. LEXIS 4498, at *7 (E.D.N.C. Feb. 12, 1999); <u>see Hughes Network Sys., Inc.</u>, 17 F.3d 691, 693 (4th Cir. 1994).

### 1. Likelihood of Irreparable Harm to Times-News, and Likelihood of Success on the Merits

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I. The City readily acknowledges that Ordinance 08-09 implicates the First Amendment and that sale of the Times-News' newspapers constitutes protected speech. (Doc. 7 at 5.) The Supreme Court has stated that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976). If Ordinance 08-09 goes into effect, Times-News will

clearly be prohibited from selling a portion (albeit small) of its
newspapers by street vendors, at least in the manner presently
used. However, whether Times-News is likely to suffer irreparable
harm is a determination bound up with the likelihood it will
succeed on the merits. <u>Carandola</u>, 303 F.3d at 511. "A finding of
irreparable injury must, therefore, depend at a minimum on the
probable soundness of plaintiff's allegations of violation of
constitutional rights." <u>Joyner v. Lancaster</u>, 553 F. Supp. 809, 815
(M.D.N.C. 1982); <u>see</u> <u>also</u> <u>Jackson v. Leake</u>, 476 F. Supp. 2d 515,
523 (E.D.N.C. 2006) (analyzing both factors together because they
are inseparably linked in the First Amendment challenge); <u>Hicks</u>,
1999 U.S. Dist. LEXIS 4498, at *8 (finding that claim of First
Amendment harm "causes both the first and third prongs of the
preliminary injunction inquiry in this case to be subsumed into an
analysis of the merits of plaintiffs' First Amendment claims").[3]

### a. Public Forum

The degree of protection afforded an interest within the scope
of the First Amendment depends on the forum in which the activity
is pursued. <u>Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.</u>, 473
U.S. 788, 797 (1985). The City acknowledges that public streets
are public fora and that Ordinance 08-09 is subject to a

---

[3] For the reasons noted herein, the court would reach the same
conclusion below if it considered the balance of harms first without
simultaneously analyzing the likelihood of success on the merits.

traditional public fora analysis. (Doc. 7 at 5); <u>Frisby v. Schultz</u>, 487 U.S. 474, 480 (1988) (holding that "all public streets are held in the public trust and are properly considered traditional public fora"). Where the governmental restriction is content-based, the state bears a high burden of showing that "its regulation is necessary to serve a compelling state interest and it is narrowly drawn to achieve that end." <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460 U.S. 37, 45 (1983). If the restriction is content-neutral, the state may enforce the time, place and manner of the expression if it can show that the restriction is "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." <u>Id.</u>

### b. Content-Neutrality

At the injunction hearing, but not in its brief, Times-News raised the claim that Ordinance 08-09 is not content neutral. To be content-neutral, a restriction "may not be based upon either the content or subject matter of speech." <u>Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n</u>, 447 U.S. 530, 536 (1980). Ordinance 08-09 qualifies in this respect. It applies evenhandedly to all who wish to solicit from motorists. No person or charity is permitted to engage in the prohibited activities dependent upon their point of view, message or belief. <u>See</u> <u>Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.</u>, 452 U.S. 640, 648-49 (1981) (upholding

10

restriction at fair grounds as content-neutral). Further, there is no evidence that the City adopted Ordinance 08-09 because of any disagreement with the message conveyed by any particular group, including Times-News. Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

### c. Narrowly Tailored to Serve Significant Governmental Interest

Given that Ordinance 08-09 is content-neutral, the City must first demonstrate that it is narrowly tailored to serve a significant governmental interest. Perry, 460 U.S. at 45. Times-News does not contest that the City has a valid governmental interest in protecting public safety. (Doc. 4 at 5-6.) The Ordinance itself reflects that it was passed to improve "public safety" and to address what the City deemed a "significant hazard both to pedestrians and motorists." (Doc. 4, Ex. A at 13.) Rather, Times-News contends that the City has failed to provide sufficient evidence to justify the ordinance under the constitutional standard. (Doc. 4 at 6.) It points to the absence of any reported injuries to its vendors or to vehicular traffic as a result of its street sales and argues that safety could be better ensured through law enforcement of persons acting in an unsafe manner.

In matters of public safety, "[t]he State need not wait for personal injuries." United States Labor Party v. Oremus, 619 F.2d

11

683, 688 n.4 (7th Cir. 1980) (upholding similar restriction against First Amendment challenge); see also Ass'n of Cmty. Orgs. for Reform Now v. St. Louis County, 930 F.2d 591, 596 (8th Cir. 1991) ("ACORN") (finding that "[t]he fact that there was no evidence of ACORN's solicitors being hurt is of no probative value" when upholding restriction on roadway solicitations). As one court has concluded in a similar situation, the dangers of soliciting amongst the traffic is self-evident and is supported by common sense. ACORN, 930 F.2d at 596; see also ACORN v. City of Phoenix, 798 F.2d 1260, 1268-70 (9th Cir. 1986); Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge, 876 F.2d 494, 498 (5th Cir. 1989); accord Multimedia Publ'g Co. of S.C., Inc. v. Greenville-Spartanburg Airport Dist., 991 F.2d 154, 160 (4th Cir. 1993) (finding that defendant was "entitled to advance its interests by arguments based on appeals to common sense and logic"). But the City has also produced evidence that soliciting in the roadways and on the rights-of-way amongst traffic is a dangerous activity. Its expert opinion evidence was uncontradicted. That Ordinance 08-09 is designed to protect the public interest is also evidenced by the fact it tracks N.C. Gen. Stat. § 20-175(d) (2008), which authorizes local governments to pass such ordinances to restrict solicitations on public roadways.[4]

---

[4] N.C. Gen. Stat. § 20-175(d) provides in part:

12

The City's evidence demonstrates that the Times-News' street vendors' activity falls within the scope of the problem that Ordinance 08-09 was designed to address. The City produced videotape of Times-News street vendors standing in the roadway medians, walking into active roadways to sell newspapers to passing motorists, and selling to motorists who are stopping at green lights, causing other traffic to divert or stop until the transaction is completed. (Doc. 7, Attach. 3 at Ex. J.) The court therefore finds that Ordinance 08-09 is designed to address a significant governmental interest. *See*, *e.g.*, <u>Madsen v. Women's Health Ctr., Inc.</u>, 512 U.S. 753, 768 (1994) (finding that the state "has a strong interest in ensuring the public safety and order[] [and] in promoting the free flow of traffic on public streets and sidewalks").

The heart of Times-News' attack is the next aspect of this element, namely whether Ordinance 08-09 is *narrowly tailored* to achieve the significant governmental interest. Times-News argues that the Ordinance sweeps too broadly, including *any* person on *any* street soliciting *any* sales from a motorist. (Doc. 4 at 6.) Times-News also faults the Ordinance because it does not focus on

_____

Local governments may enact ordinances restricting or prohibiting a person from standing on any street, highway, or right-of-way excluding sidewalks while soliciting, or attempting to solicit, any employment, business, or contributions from the driver or occupants of any vehicle . . . .

13

"particular streets or highways or particular times of day where there were documented traffic or public safety incidents." (Doc. 4 at 6.) As such, Times-News contends the Ordinance, without a "newspaper exemption," functions as an "outright ban on the solicitation and distribution of newspapers to motorists." (Doc. 4 at 6-7.)

A restriction is narrowly tailored if it promotes a significant governmental interest "that would be achieved less effectively absent the regulation." <u>Ward</u>, 491 U.S. at 799. It need not be the least restrictive method for achieving the goal, but it cannot substantially burden more speech than necessary. <u>Id.</u> at 798-99. The Supreme Court has long acknowledged the right of a municipality to enact narrow and reasonable regulations to keep streets safe for travel without infringing the First Amendment. <u>Cox v. New Hampshire</u>, 312 U.S. 569, 574 (1941).

Ordinance 08-09 prohibits solicitations that require that commerce be conducted in the roadways but permits other kinds of speech that do not involve solicitations. The Supreme Court has recognized a fundamental distinction between communicating ideas and speech that requires intercepting individuals for cash transactions. <u>Heffron</u>, 452 U.S. at 653-54 (upholding stringent restrictions on the location of sales and solicitation activity). Such commercial transactions require that customers stop, find and

14

exchange cash, and manage their change before continuing on. United States v. Kokinda, 497 U.S. 720, 733-34 (1990) (noting that solicitations impede the flow of traffic and are inherently more intrusive than distributing literature). Solicitations for cash therefore take longer and are more involved than other forms of expression. As Justice Blackmun observed, "sales and the collection of solicited funds not only require the [patron] to stop, but also 'engender additional confusion . . . because they involve acts of exchanging articles for money, fumbling for and dropping money, making change, etc.'" Heffron, 452 U.S. at 665 (Blackmun, J., concurring in part, dissenting in part). As the Seventh Circuit noted, there are "evident dangers of physical injury and traffic disruption that are present when individuals stand in the center of busy streets trying to engage drivers and solicit contributions from them." Oremus, 619 F.2d at 688 (internal citation omitted). "The direct personal solicitation from drivers distracts them from their primary duty to watch the traffic and potential hazards in the road, observe all traffic control signals or warnings, and prepare to move through the intersection." ACORN, 798 F.2d at 1268-69.

Times-News' attempt to distinguish these cases on the grounds that the First Amendment activity did not involve newspapers is unavailing. Times-News' argument for a newspaper exception is

unsupported by any case law. It is true that some restrictions have excepted newspapers in certain instances and singled them out in others. See, e.g., Leathers v. Medlock, 499 U.S. 439, 452-53 (1991); Weinberg v. City of Chicago, 310 F.3d 1029, 1035 (7th Cir. 2002). Newspapers nevertheless share equally in the exercise of free expression rights and enjoy no elevated status. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 784 (1985) ("the rights of the institutional media are no greater and no less than those enjoyed by other individuals or organizations engaged in the same activities"); First Nat'l Bank v. Bellotti, 435 U.S. 765, 782 (1978) ("the press does not have a monopoly on either the First Amendment or the ability to enlighten."). Allowing some forms of expression while denying others does not signify a First Amendment violation. Kokinda, 496 U.S. at 734. Further, it is the act of soliciting that creates the danger, not the medium of the message.

The City has also adduced evidence that while the safety concerns are particularized at several of the City's busier intersections where the Times-News sells newspapers, the mere presence of vendors in and amongst traffic creates a danger.[5] This is true irrespective of the time of day and holds true for even

---

[5] The court takes notice that maintenance workers who must work on the roads and in the rights-of-way have been the subject of injuries from inattentive drivers. Pinkston v. Connor, 63 N.C. App. 628, 632, 306 S.E.2d 132, 134 (1983).

16

lesser traveled roads. (Doc. 7, Attach. 1 at 7.) The City has also produced reports showing that automobile accidents occur in medians where Times-News venders would operate. (<u>Id.</u>, Attach. 3 at 4, Attach. 1 at 5-7.) Though the Times-News argues that the City could have restricted only sales that disrupt traffic, the court finds that allowing vendors in the rights-of-way and amongst the traffic constitutes a danger sought to be avoided. Indeed, the City's evidence showed that motorists stopped to hail vendors even when the traffic signal was green, thus making the Times-News' suggested modification impractical.

Times-News' attempt to equate street vendors with pedestrians is unconvincing. Pedestrians' purpose is to cross the road, and they are limited in when and where they can do so. Street vendors, on the other hand, loiter in the medians, which are not safe havens, and mingle among moving vehicles to conduct transactions. The evidence demonstrated that the medians were as narrow as four feet and that vehicles, including trucks with large side mirrors, passed at dangerous speeds. (<u>Id.</u>, Attach. 3 at 6.)

### d. Ample Alternative Channels of Distribution

Contrary to Times-News' contention, Ordinance 08-09 does not amount to a ban on solicitation of motorists. While an alternative is not adequate if it forecloses the ability to reach an audience, the ordinance leaves ample alternative channels of distribution for

17

Times-News to solicit customers. <u>Heffron</u>, 452 U.S. at 647-48.
Times-News does not contend otherwise. To pass constitutional
muster, an ordinance need not be the least restrictive method for
achieving the governmental goal. <u>Ward</u>, 491 U.S. at 797. Vendors
remain free to operate from the sidewalks, where they are not
required to enter into the street to conduct sales with motorists.
Even from the sidewalks, to be sure, they cannot conduct sales in
a fashion that impedes traffic. N.C. Gen. Stat. § 20-175(b)
(2008).

Mr. Buckley testified to the increased competition newspapers
are facing in the media market and noted the financial importance
of the 800 marginal sales from Times-News' street vendor program.
Times-News' argument is financial, related not to the lost cover
price of approximately $200 a week, but principally to the related
advertising revenue associated with loss of additional exposure.
While this court is sensitive to Times-News' competitive pressures,
the mere fact that there is a financial loss does not establish a
First Amendment violation. <u>Hart Book Stores, Inc. v. Edmisten</u>, 612
F.2d 821, 828 (4th Cir. 1979) ("The inquiry for First Amendment
purposes is not concerned with economic impact." (quoting Young v.
Am. Mini Theatres, Inc., 427 U.S. 50, 78 (1976) (Powell, J.,
concurring))). Moreover, nothing in Ordinance 08-09 prohibits the
distribution of newspapers without the financial transaction, which

lack of exposure Mr. Buckley testified was the driver of its potential revenue loss. Moreover, ninety-seven percent of its sales are not implicated by the Ordinance. As manifestly commendable as Times-News' association with charitable groups is, the potential alteration or end of that program also does not in itself constitute a First Amendment infringement.

Times-News relies heavily on Weinberg v. City of Chicago, 310 F.3d 1029 (7th Cir. 2002). In Weinberg, the court struck down an ordinance that prohibited the peddling of books on public property within 1,000 feet of the United Center sports complex in Chicago. 310 F.3d at 1034. Weinberg claimed that the ordinance infringed on his First Amendment press right to sell his screed attacking the owner of the Chicago Blackhawks ice hockey team. Id. at 1033-34, 1037. The Seventh Circuit concluded that the ordinance was content neutral but failed to be a narrowly tailored time, place and manner restriction because it took an "all or nothing" approach rather than seeking a middle ground. Id. at 1040-41.

Weinberg is not on point, as the concern there was infringing Weinberg's right to convey his particularized message to his particularized audience of Blackhawks fans, who would only be found within close proximity of the United Center on game nights. The ordinance "effectively eliminate[d] any opportunity for Mr. Weinberg to sell his book to patrons of the United Center," id. at

1040, and thus the court held that where an alternative "forecloses a speaker's ability to reach one audience even if it allows the speaker to reach other groups," it is not adequate. Id. at 1041 (internal citation omitted). Here, by contrast, Times-News remains free to disseminate its message to its audience, ninety-seven percent of whom do not seek to purchase through street vendor sales. And granted that sales may be more difficult and not as robust in volume per street vendor under the ordinance, Times-News will remain free to sell to motorists from the sidewalks. The present case is also set apart because the safety concerns here are obviously much greater than those in Weinberg. See id. at 1039-40. The record indicates that serious injury or death is a real possibility and, unlike in Weinberg, the evidence demonstrates that the City has tailored its ordinance to address public safety and traffic flow. Cf. id. at 1039.

This case reflects the City's attempt to balance its responsibility to its citizenry to ensure public safety on its roadways with the important goal of preservation of the free dissemination of the news. The court finds that, at this stage, Ordinance 08-09 appears to be a content-neutral and reasonable time, place and manner restriction that is supported by substantial evidence, is narrowly tailored and leaves ample alternative avenues of communication. This conclusion is also consistent with the

20

determinations of at least five other courts that have analyzed similar, if not identical, restrictions. <u>City of Baton Rouge</u>, 876 F.2d at 495-96, 496-500; <u>Oremus</u>, 619 F.2d at 686, 687-88; <u>ACORN</u>, 930 F.2d at 593, 594-97; <u>City of Phoenix</u>, 798 F.2d at 1262, 1267-71; <u>Sun-Sentinel v. City of Hollywood</u>, 274 F. Supp. 2d 1323, 1326-27, 1328-34 (S.D. Fla. 2003). Therefore, the court concludes that the likelihood of harm to the plaintiff and likelihood of success on the merits weigh against Times-News.

### 2. Likelihood of Harm to the City

If the requested relief is granted, the City will be restricted in its obligation to protect the motoring public in Burlington, as well as pedestrians and vendors. The evidence demonstrates that the City's medians and streets are unsafe places for persons to attempt to transact sales. Further, Mr. Buckley testified that all of the street vendors are independent contractors and accordingly are not covered by any insurance in case of accident, potentially rendering them wards of the state in the event of serious injury. Though no injury of a Times-News vendor has been reported to date, the risk is severe. Captain Smith's affidavit indicates that one of the vendors was barely missed by an automobile collision on March 16, 2008, and debris from the collision landed on the stack of newspapers being sold.

(Doc. 7, Attach. 3 at 4.)[6]  Thus, the court concludes that this factor weighs in favor of the City.

### 3.  Public Interest

This factor is closely tied to the likelihood of harm to the City to the extent that the City's primary obligation is to protect its populace.  <u>Schleifer v. City of Charlottesville</u>, 159 F.3d 843, 848 (4th Cir. 1998).  In addition, the court considers the effect the Ordinance will have on the dissemination of newspapers.  Since the days of the newsboy's call of "Extra, Extra, Read All About It," newspapers have served a vital role in promoting democracy in our nation.  The court is mindful of the critical importance of the First Amendment rights of speech and of free press.  Based on the record evidence, the restrictions of Ordinance 08-09 do not appear likely to meaningfully restrict the newspaper's communication of its message.  The court therefore concludes that this factor weighs in favor of denying the requested relief.

---

[6]  This evidence appears to be based on a hearsay report, but this court may consider it at this preliminary stage.  <u>Lockhart v. Home-Grown Indus. of Georgia, Inc.</u>, No. 3:07-CV-297, 2007 U.S. Dist. LEXIS 67256, at *16 (W.D.N.C. Sept. 10, 2007) ("At the preliminary injunction stage, however, the procedures at the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence.")

22

## III. CONCLUSION

In balancing the factors as required, the court finds, for the reasons stated above, that Times-News has not carried its burden of showing an entitlement to preliminary relief at this stage.

IT IS THEREFORE ORDERED that Times-News' Motion for Temporary Restraining Order and Preliminary Injunction should be, and hereby is, DENIED.

/s/ Thomas D. Schroeder
United States District Judge

June 30, 2008